UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DOMINIQUE MAYFIELD,<br><br>          Plaintiff.<br>v.<br><br>PORTFOLIO RECOVERY<br>ASSOCIATES, LLC,<br><br>          Defendant. | Civil File No. 0:21-cv-00001-SRN-KMM<br><br>**PORTFOLIO RECOVERY ASSOCIATES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS** |

Defendant Portfolio Recovery Associates, LLC ("PRA"), through its attorneys, Gordon Rees Scully Mansukhani, LLP, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6), for its Reply supporting its Motion to Dismiss, states as follows:

## I.  INTRODUCTION

Plaintiff Dominique Mayfield ("Plaintiff") alleges that she was served with a defective summons in a state court debt collection action. A hyper-technical provision of Minnesota Rule of Civil Procedure 4.01, abolished effective July 1, 2021, required that a summons give an in-state address for service of the answer. Plaintiff concedes that a defective summons would not invalidate her debt to PRA, but theorizes this defect made the summons "illegal," such that all further actions in that case violate the FDCPA's Section 1692f(1) prohibition against "attempts to

collect debts *not owed.*" *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) (emphasis added); Pl. Response to Motion to Dismiss ("Response"), p. 18.  Plaintiff's novel "Fruit of the Poisonous Summons" argument does not support a plausible cause of action under 1692f(1).

Plaintiff's claim that a technically non-compliant state court summons will support additional FDCPA violations is equally flawed.  15 U.S.C. §§ 1692e(5) and 1692e(10) of the FDCPA prohibit false and misleading statements.  Section 1692e(5) prohibits the threat of legal action which a party cannot legally be taken; while, 1692e(10) prohibits the use of false representations or deceptive means in collection of a debt.

Here, Plaintiff contends "the false and misleading statement in Defendant's summons [was] that Plaintiff must send her response to the complaint across state lines."  Plaintiff conspicuously fails to explain how instructing a defendant to send their answer to North Dakota is an abusive debt collection practice, or in any way material. Instead, in what Plaintiff variously terms "strict liability" and "materiality *per se*," Plaintiff asserts that neither the purposes of the FDCPA or the requirement that misrepresentations must be material should apply to her FDCPA claims. Plaintiff's novel theory of what can only be called an "FDCPA liability *per se*" doctrine, premised solely upon a state court procedural violation, is not supported by the case law of any jurisdiction and should be rejected. As detailed at length

below, courts can consider the purposes of the FDCPA, and must apply a materiality standard, in determining whether a plaintiff has stated a plausible FDCPA claim. The FDCPA was designed not just to protect consumers from abusive debt collection practices not present here, but to protect the good faith collection of valid claims such as PRA brought in the state collection action against Mayfield. Plaintiff's instant lawsuit serves neither purpose and should be dismissed.

Finally, while Plaintiff relies almost exclusively upon cherry-picked quotes from the state and federal decisions in *Wiley*, *Yang*, and *Becker,* collateral estoppel does not apply. *See* Response pp. 23-25. The state court cases did not involve Plaintiff's FDCPA claims and have no precedential value. The remainder of Plaintiff's argument simply confuses the doctrines of *res judicata* and collateral estoppel.

Plaintiff's heavy reliance on select facts of these cases, while simultaneously arguing it would be inappropriate for PRA to raise - or this Court to consider - any facts beyond Plaintiff's alleged confusion at the summons (*see* Response p. 23), illustrates the inequity of applying collateral estoppel. Rather, this Court can and should consider all the practical facets and facts of both Rule 4.01, its abolishment, and Plaintiff's claim that a defective summons was an abusive debt collection practice. In this light, Plaintiff's claims are implausible and should be dismissed.

## II. ARGUMENT

### 1. Only lawyers benefit from asking federal courts to transform since-abolished state procedural rules into FDCPA violations.

Providing a North Dakota address instead of (and indeed, in addition to) a Minnesota address in a summons is not plausibly an attempt at abusive debt collection. As a practical matter, any pleading sent to an "in-state" Minnesota address would end up in the same place - in North Dakota; the address at which Mayfield submitted any responsive pleading – had she submitted one - would not affect that responsive pleading's validity or receipt. Plaintiff thus does not ask this Court to protect her and others from having to mail a response to North Dakota. Nor has she argued that her lawsuit could plausibly benefit consumers or good faith debt collectors as the FDCPA intended.

Instead, this case is merely another example of a "lawyers' case" which has "strayed far afield from the goal of the FDCPA." *See Ocampo v. Client Services*, 2019 WL 111819, at *3 (E.D.N.Y.); *Saraci v. Convergent Outsourcing, Inc.*, 2019 WL 1062098, at *7-8 (E.D.N.Y.). Rather than vindicating consumers harmed by abusive debt collection practices, cases such as this "stretch[] the statute to unreasonable lengths" to the benefit of no one "except [the] lawyers." *See id.* Federal courts have thus criticized the "cottage industry" created by "plaintiffs' lawyers filing suits over fantasy harms the statute was never intended to prevent."

*See Kraus v. Prof'l Bureau of Collections of MD, Inc.*, 281 F. Supp. 3d 312, 322 (E.D.N.Y. 2017). The results of the state court matters highlight how this case, as in the other cases created by Plaintiff's counsel, benefits no one but lawyers.

This is evident from the actual results of the state court cases where Plaintiffs' counsel vigorously litigated the summons issue, and of course in some instances, where counsel failed to timely do so on behalf of his clients. *See Portfolio Recovery Associates, LLC v. Becker*, Case No 27-CV-20-2936, Order and Memorandum Denying Def.'s Mot. Dismiss Am. Comp. (Nov. 12, 2020)(denying motion to dismiss as untimely and finding that Becker had waived any objections to the summons); *Portfolio Recovery Associates, LLC v. Wiley*, Case No. 27-CV-19-21436, *Portfolio Recovery Associates, LLC v. Yang*, Case No. 27-CV-20-70 (dismissing each *without* prejudice); *cf. Demarais*, 869 F.3d at 699 (a dismissal *with* prejudice means a debt is one "not owed" within the meaning of the FDCPA).

Besides the *Becker* state court case proceeding with full force to trial – with Becker's summons claim, and others, put to bed in PRA's favor, and the only ruling on the merits in the *Wiley* state court matter being decided in *PRA's* favor, at summary judgment, even the nominal state court "victories" for these consumers were illusory, at best. Indeed, after securing dismissal in the *Yang* state court matter, Plaintiff's counsel pursued federal claims against PRA but *withdrew as her counsel in state court*. When PRA refiled the complaint against Ms. Yang, with an *amended*

5

summons, Ms. Yang, unrepresented by counsel, failed to answer. Accordingly, the state court entered default judgment against her. *Yang* judgment, attached hereto as Exhibit A. Her case merely illustrates how consumers do not benefit from a lawyer's FDCPA case based on no more than minor state procedural violations. Mayfield's identical federal complaint should be dismissed.

**2.      Plaintiff fails to state plausible claims under 15 U.S.C. §§ 1692e(5) or (10).**

The results of the state court actions upon which Plaintiff so heavily relies also demonstrate how any violation of Rule 4.01 was immaterial and fails to state a plausible claim for relief. *See, e.g., Caulfield v. Am. Account & Advisors, Inc.*, Civ. No. 12–2761, 2013 WL 1953314, at *2 (D. Minn. May 10, 2013) (granting defendant's motion for judgment on the pleadings as to claim under section 1692e(10) because debtor failed to articulate how allegedly false statement undermined her ability to intelligently choose her action regarding account at issue). Since Plaintiff cannot explain how using a North Dakota address in violation of the abolished version of Rule 4.01 undermined her ability to intelligently choose whether to answer, Plaintiff argues both that the Minnesota state courts have already held that violating Rule 4.01 is material, and that materiality is not required to support 1692e(5) and 1692e(10) claims. *See Response* p. 8-11, 15-16. These legal premises are faulty and should be rejected.

Far from the inviolable and sacrosanct process Plaintiff proposes, Minnesota courts have spent the past century reiterating that a summons is "merely a notice to defendant that an action against him has been commenced and that judgment will be taken against him if he fails to answer." *Flanery v. Kusha*, 173 N.W. 652, 652 (Minn. 1919). In *Flanery*, the defendant similarly moved to set aside a default judgment because of a "defect in the summons" which consisted of "the omission of the word 'days' after the word 'twenty.'" *See id.* While this defect had violated the technical procedural rules related to summons, Minnesota held that "such an omission was an irregularity only." *Id.* at 311. Such technical violations thus do not render the summons "illegal" in state court as Plaintiff suggests.

Even Plaintiff's hypothetical, in which she claims that a summons providing the wrong number of days to answer is a "misrepresentation regarding the consumer's rights" and a "false threat," was rejected as a grounds for dismissal of a state court action a century ago. *See* Response, p. 11. As discussed in *Flanery*, the Supreme Court of Minnesota allowed the plaintiff in *Lockway v. Modern Woodmen*, 133 N.W. 398 (Minn. 1911), to amend a summons which had required the defendant to answer the complaint in 20 days, instead of the 30 days he was allowed under the relevant statute. *See Flanery*, 173 N.W. at 652-3. However, "if the summons had required defendant to answer within a less number of days than 20, the mistake would be a mere irregularity and subject to amendment." *Id.* at 653. Thus, contrary

7

to the arguments in this "lawyers' case," Minnesota state courts, in their sound discretion, interpret procedural summons' rules liberally "to avoid defeating an action merely because of technical and formal defects which could not reasonably have misled or prejudiced a defendant.'" *DeCook v. Olmsted Med. Ctr., Inc.*, 875 N.W.2d 263, 265 (Minn. 2016) (internal quotation marks and citation omitted).[1] Thus, Minnesota cases interpreting summons rules do not support Plaintiff's contention that alleging a violation based upon a technical deficiency is sufficient to state plausible and material section 1692e(5) and 1692e(10) claims.

    Rather, as Minnesota state court cases have been reiterating for a century, the summons is merely a notice of the debt collection action. Thus, while Plaintiff's causes of action rely exclusively on her allegation that she was "actually confused" by the statement in the summons that she "must send a copy of your answer to the person who signed this summons located at: PO Box 2427, Fargo, ND 58108-2427," Plaintiff still had the choice of whether to answer that notice. Nothing in PRA's summons undermined her ability to make that choice. *See Haas v. Brandvold*, 418 N.W.2d 511 (Minn. Ct. App. 1988) ("There is no evidence that Brandvold tried, but was unable, to serve an answer. Because of these particular facts, the summons was

---

[1] While Plaintiff's counsel has offered his own declaration regarding the state court proceedings, which he cites throughout, ethical rules prohibit him from acting as both a witness and as counsel in this matter. *See* Minn. Rules of Prof'l Conduct R. 3.7 (2019).

not insufficient.").

Similarly implausible is the implication behind Plaintiff's reasoning - that a North Dakota address inexplicably undermined a consumer's decision to answer a complaint in 2020, but will apparently no longer "actually confuse[]" consumers after July 2021 when the rule is abolished. "If a statement would not mislead the unsophisticated consumer, it does not violate the [Act]—even if it is false in some technical sense." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ((internal quotation marks and citation omitted)). Thus, just as in *Hill*, Plaintiff has failed to plausibly allege that a North Dakota address "undermined her ability to intelligently choose" what action to take "regarding her debt.'" *See Hill*, 2016 WL 6462119, at *6 (internal quotation marks and citation omitted).

Plaintiff has failed to meet her burden of demonstrating that the summons was a material misrepresentation under the FDCPA. A plaintiff who alleges that a debt collector used false, deceptive, or misleading representations or means in connection with the collection of any account, must show those representations or means materially misled the unsophisticated consumer. *See Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343 (8th Cir. 2018). Since Plaintiff cannot meet this burden, she now claims that to require her to plead material misrepresentations is to add an element of proof not required by the FDCPA. *See Response*, p. 15, 21. Plaintiff's arguments are amiss.

9

Far from adding a new element to the FDCPA, "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). "The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect). . . A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id.* at 757-58 (internal quotation marks and citations omitted). Thus, directing Plaintiff to send her answer to a North Dakota address was an immaterial statement *regardless of its truth*, and insufficient to support plausible claims under section 1692e(5) or 1692e(10). *See Hill*, 888 F.3d 343 (8th Cir. 2018) (citing *Hahn* in holding that the Eighth Circuit "joins[s] the Seventh Circuit and the other circuits that have applied a materiality standard to § 1692e."). This Court should reject Plaintiff's argument that materiality does not apply under *Hill*. *See id.* at 345 ("Hill argues that the district court erred by applying a materiality standard to these provisions. We disagree.").

Finally, PRA respectfully suggests this Court reject Plaintiff's invitation for it to adopt a "materiality *per se*" standard or what Plaintiff elsewhere describes as "strict liability." *See Response*, pp. 4-7, 21 n.4. These arguments ask this court to apply a rationale that would function similar to a "negligence *per se*" claim, but to alleged

10

FDCPA violations. Under Plaintiff's rationale, a representation in a summons that is technically incorrect is a *per se* material and plausible FDCPA violation, just as violating a statute can lead to a negligence *per se* claim. Not a single court has adopted such a radical interpretation of the FDCPA.

The Eighth Circuit has explicitly rejected this "per se" argument. *Haney v. Portfolio Recovery Assocs., L.L.C.*, 895 F.3d 974, 988 (8th Cir. 2016), cited with approval the holding of *Gallego v. Northland Group., Inc*., 814 F.3d 123, 127 (2d Cir. 2016), that "the FDCPA does not make violations of state and local debt collection statutes ... per se actionable under the FDCPA." (internal quotation marks omitted). The *Haney* court also noted that "sections 1692e and 1692f are not federal enforcement mechanisms intended to reach every violation of state collection law." 895 F.3d at 988. Mere state procedural noncompliance thus "is not a material representation of anything." *See Bell v. Portfolio Recovery Assocs., LLC*, No. 18-1027 (PAM/TNL), 2018 U.S. Dist. LEXIS 161500, at *9 (D. Minn. Sep. 21, 2018). A plaintiff's section 1692e claims must be plausible, and the alleged misrepresentation sufficiently material. Plaintiff's claims are neither, and should be dismissed.

### 3.     Plaintiff fails to state a plausible Section 1692f(1) claim.

Section 1692f(1) prohibits "attempts to collect debts not owed." *See Demarais*, 869 F.3d at 691. Plaintiff emphasizes that she is not claiming the

11

summons in this case in any way "extinguishe[d]" her debt. *See Response* p. 18. Instead, Plaintiff argues that "service of an illegal summons delegitimizes all further collection efforts that are *based on the illegal summons.*" *See id.* (bolding omitted). Thus, she reasons, pursuing default judgment in a matter involving a defective summons is "illegal." *See id.* Plaintiff also emphasizes her characterization of the summons as "unlawful" and "misconduct." *See id.* pp. 19-20. However, this novel "Fruit of the Poisonous Summons" argument is not supported by Minnesota or federal law.

The state court in the *Becker* action did not accept this rationale, as PRA claims against her continue to be duly litigated. *Portfolio Recovery Associates, LLC v. Becker*, Case No 27-CV-20-2936, Order Setting Trial Date (May 25, 2021). This is consistent with over a century of Minnesota jurisprudence specifically rejecting claims that a defect in a summons makes further actions in a matter illegal. For example, *DeCook* specifically "rejected the contention that the signature defect made the complaint a legal nullity." *See* 875 N.W.2d at 268. "This position is at odds with the policies underlying the Rules of Civil Procedure and the way we have previously addressed the amendment of defective summonses and complaints. We have repeatedly interpreted the rules regarding the court's acquisition of jurisdiction by summons liberally 'to avoid defeating an action merely because of technical and formal defects which could not reasonably have misled or prejudiced

a defendant." *Id.* Similarly, in *Haas*, that court held that substantial compliance with summons rules was sufficient. *See* 418 N.W.2d at 513. In *Flanery*, a "defect in the summons" merely consisting of omitting a word may have violated procedural rules but that violation amounted to "an irregularity only." *See* 173 N.W. at 311. Contrary to Plaintiff's suggestion, such technical violations of Minnesota summons rules do not make all further actions illegal. Plaintiff's Fruit of the Poisonous Summons argument should be rejected as an implausible Section 1692f(1) cause of action.

Nor does the fact that Plaintiff had an arguable *defense* to the summons transform PRA's attempts to collect her account into actions not permitted by law. This theory has also been rejected in the Eighth Circuit. In *Hill*, the Eighth Circuit stated, "[T]hat Hill may have had a valid legal defense to the application of the statute does not mean that Accounts Receivable attempted to collect interest that is not permitted by law." *See* 888 F.3d at 346. Plaintiff's theory that a defective summons makes the debt in that matter one "not owed" is implausible and fails to state a valid 1692f(1) claim. *Cf. Demarais*, 869 F.3d at 699 (a dismissal *with prejudice* means a debt is one "not owed" within the meaning of the FDCPA).

**4.     Plaintiff's claims seek to impermissibly bootstrap former Minnesota Rule of Procedure 4.01 onto the FDCPA.**

Courts do not permit a plaintiff to use the FDCPA to enforce other legal rules. *See Eul v. Transworld Systems*, 2017 WL 1178537, No. 15 C 7755 (N.D. Ill.

3/30/2017). Plaintiff argues otherwise, attempting to distinguish the facts of a few cases to avoid the full force and effect of this broadly applied rule. *See, e.g.,* Response p. 15. Just as in *Eul* and many other cases, Plaintiff's attempt to bootstrap other state rules to create an FDCPA claim should be rejected. Citing *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007), *Eul* explained that the FDCPA "does not so much as hint at being an enforcement mechanism for other rules of state and federal law." The question in such cases was whether the plaintiff's FDCPA claim was entirely derivative of the violation of state law. *See Eul*, 2017 WL 1178537 at *13. The answer is apparent from Plaintiff's response – her claims rest solely upon an alleged Rule 4.01 violation.

In affirming this principle, other cases have emphasized that such claims run counter to the FDCPA's "apparent objective of preserving creditors' judicial remedies." *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012). This case emphasized that, just as here, neither Plaintiff nor her counsel "took any action in reliance" on the alleged misrepresentation. *Id.* Also, similar to this matter:

> the only financial injury [plaintiff] now alleges is incurring attorney's fees to prevail in the state court litigation. Yet the state court denied [her] prayer for a fee award in that action, and review of counsel's time sheets suggests that a considerable amount of the time claimed was spent preparing to commence this FDCPA lawsuit. In these circumstances, we have no difficulty affirming the dismissal of these FDCPA claims on the merits.

14

*Id.* In other words, not only does the Eighth Circuit refuse to bootstrap state procedural violations onto FDCPA claims, it recognizes that suits which only serve to benefit counsel run contrary to the purpose of the FDCPA.

The court in *Bell v. Portfolio Recovery Associates, LLC*, 2018 WL 4539699, Civ. No. 18-1027 (PAM/TNL), Civ. No. 18-1028 (PAM/HB) (D. Minn. Sept. 21, 2018), even more firmly rejected a plaintiff's claims "that a violation of Minnesota law can be a violation of the FDCPA." *Id.* at *2. Rather, *Bell* explained, "[t]he question here is whether a violation of this particular Minnesota law constitutes a violation of the FDCPA. It clearly does not." Here, inclusion of a North Dakota address in a summons does not equate to a plausible violation of the FDCPA.

Other cases have recognized that attempting to enforce such technical violations of state procedural rules under the FDCPA would lead to the "absurd result" of rewarding "a creative yet ostensibly unharmed plaintiff at the expense of a non-abusive debt collector." *See Kraus v. Professional Bureau of Collections of Maryland, Inc.*, 281 F.Supp.3d 312, 314 (E.D.N.Y. 2017). "The FDCPA is intended to prevent debt collectors from trying to trap unsophisticated debtors; it is not intended to be a trap for debt collectors." *Id.* at 321. Nor is the FDCPA "meant to insure consumers against the negative consequences of debt evasion." Thus,

> Stepping back from a Talmudic examination of *Avila,* we would do well to recall the purpose of the FDCPA and, in light of that statutory purpose, to consider just what the alleged harm is in this case.

15

> Hornbook tort law teaches that the violation of a statute will subject the violator to liability if the person harmed is a member of the class the statute was designed to protect and the harm complained of is the harm the statute was designed to prevent. Though this action does not sound in tort, the principle precisely applies. As a consumer, Kraus is a member of the class the FDCPA was designed to protect. As to harm, however, the statute's enacted purpose was "to eliminate abusive debt collection practices," 15 U.S.C. § 1692(e)—abusive practices such as "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. 95–382, at 2 (1977). Was Kraus so abused? To ask this question is to answer it.

Thus, the question is *not* whether PRA violated Rule 4.01. The question is whether inclusion of a North Dakota address in a summons was i a violation of the FDCPA. Just as in *Kraus*, the question is whether PRA abused Mayfield. As the answer is in the negative, Plaintiff's claims should be dismissed.

**5.     The state and federal *Wiley*, *Yang*, and *Becker* cases do not estop PRA from moving to dismiss Plaintiff's claims.**

Plaintiff argues that the state and federal decisions in the *Wiley*, *Yang*, and *Becker*, are dispositive of all issues in this case. *See Response* p. 1. Plaintiff claims those decisions substantively decided all matters raised by PRA's motion to dismiss, and that PRA should be collaterally estopped from raising its arguments. *See id.* pp. 23-25. Plaintiff is incorrect.

Plaintiff characterizes the nature and status of the state court actions as

supporting her current claims. The actual results of those cases – one of which is still pending and one of which resulted in a refiling and default judgment – do not support Plaintiff's characterization of the results in those matters. State collection actions are not evidence of FDCPA violations and neither bind nor hold precedential value for this Court. *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 820 (8th Cir. 2012); *Kmart Corp. v. Cty. of Stearns*, 710 N.W.2d 761, 769-70 (Minn. 2006); *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 537 n.5 (Minn. 2013). Plaintiff's reliance on those state court matters is thus misplaced, supporting neither her claims nor her collateral estoppel argument.

Plaintiff's reliance on *Wiley* as collaterally estopping the present motion to dismiss is equally misplaced. *See Wiley v. Portfolio Recovery Assocs., LLC*, No. 20-cv-00737 (SRN/KMM), 2021 U.S. Dist. LEXIS 37230 (D. Minn. Mar. 1, 2021). In Minnesota, collateral estoppel only applies where (1) the *identical* issue was previously adjudicated; (2) there was a final judgment on the merits, (3) the estopped party was the same as, or in privity with, the party in the other proceeding, and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *See Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529 (Minn. 2003). Plaintiff has not satisfied this test.

The issues raised in the instant motion cannot be identical, as the *Wiley* court did not have the *Smith* Eighth Circuit authority before it when it issued its inapposite

opinion in *Wiley*. *See Smith v. Stewart, Zlimen & Jungers, Ltd.*, 990 F.3d 640 (8th Cir. 2021). *Smith* provided additional guidance and clarification on the Eighth Circuit's treatment of state procedural violations as alleged FDCPA claims. That new precedent elucidates the analysis a court should undertake when considering such claims, and directs a result different than *Wiley*.

Equitable estoppel is an *equitable* doctrine that Plaintiff should not be allowed to invoke. "Collateral estoppel is an equitable doctrine. . . and courts do not apply it rigidly but focus instead on whether an injustice would be worked upon the party upon whom the estoppel is urged." *Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009). In equity, that doctrine should not apply to this "lawyer's case" that explicitly asks this Court to ignore the purpose of the FDCPA.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: June 1, 2021                                  Respectfully submitted,

                                                          **PORTFOLIO RECOVERY ASSOCIATES, LLC**, Defendant

By:    */s/ Jaime L. Wiesenfeld*
        Jaime L. Wiesenfeld, *pro hac vice*
        Suzanne L. Jones (SBN 0389345)
        GORDON REES SCULLY MANSUKHANI, LLP

18

                100 S. Fifth St., Suite 1900
                Minneapolis, MN 55402
                Ph: (612) 426-4650
                jwiesenfeld@grsm.com
                sljones@grsm.com
                *Attorneys for Defendant*
                *Portfolio Recovery Associates, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021, I electronically filed with the Clerk of the U.S. District Court, the foregoing **Defendant's Reply in Support of its Rule 12(b)(6) Motion to Dismiss** by using the CM/ECF system, which will send notification of such filing(s) to all counsel of record listed below:

Darren B. Schwiebert (#260642)
DBS Law LLC
301 Fourth Avenue South, Suite 280N
Minneapolis, MN 55415
Ph: (612) 501-6008

      /s/*Jaime L. Wiesenfeld*
Jaime L. Wiesenfeld, *pro hac vice*
Suzanne L. Jones (SBN 0389345)
GORDON REES SCULLY MANSUKHANI, LLP
100 S. Fifth St., Suite 1900
Minneapolis, MN 55402
Ph: (612) 426-4650
jwiesenfeld@grsm.com
sljones@grsm.com
*Attorneys for Defendant*
*Portfolio Recovery Associates, LLC*